995 F.2d 1063
 1993-1 Trade Cases P 70,264, Util. L. Rep. P 13,942
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NORTH CAROLINA ELECTRIC MEMBERSHIP CORPORATION; Haywood
Electric Membership Corporation; Pitt & Greene Electric
Membership Corporation; Four County Electric Membership
Corporation; Piedmont Electric Membership Corporation;
Halifax Electric Membership Corporation; Randolph Electric
Membership Corporation; Harkers Island Electric Membership
Corporation; Brunswick Electric Membership Corporation;
Jones-Onslow Electric Membership Corporation; French Broad
Electric Membership Corporation; Wake Electric Membership
Corporation; Tri-County Electric Membership Corporation;
Lumbee River Electric Membership Corporation; South River
electric Membership Corporation; Carteret-Craven Electric
Membership Corporation; Central Electric Membership
Corporation, Plaintiffs-Appellants,
v.
CAROLINA POWER AND LIGHT COMPANY, Defendant-Appellee,
and
South Carolina Electric & Gas Company, Defendant.
 No. 92-1517.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 2, 1993
Decided: June 9, 1993
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Frank W. Bullock, Jr., Chief District Judge. (CA-77-396-C-G)
 Jerry S. Cohen, Cohen, Milstein, Hausfeld & Toll, Washington, D.C., for Appellants.
 Ray S. Bolze, Howrey & Simon, Washington, D.C., for Appellee.
 Wallace E. Brand, Sean T. Beeny, Melvin G. Berger, Brand, Beeny, Berger & Whitler, Washington, D.C.; Edward L. Murrelle, Kenneth Kyre, Jr., Richard J. Votta, Nichols, Caffrey, Hill, Evans & Murrelle, Greensboro, North Carolina, for Appellants.
 John C. Peirce, Joseph A. Ostoyich, Howrey & Simon, Washington, D.C.; Richard G. Bernhardt, Jr., Smith, Helms, Mulliss & Moore, Greensboro, North Carolina; Richard E. Jones, H. Ray Starling, Jr., Carolina Power & Light Company, Raleigh, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before BUTZNER, Senior Circuit Judge, VOORHEES, Chief United States District Judge for the Western District of North Carolina, sitting by designation, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Plaintiffs, the North Carolina Electric Membership Corp. and sixteen of its member retail electric cooperatives (together, "NCEMC"), appeal the district court's grant of a directed verdict for defendant Carolina Power & Light (CPL) on NCEMC's claim under Section 2 of the Sherman Act. We find no error in the district court's decision and affirm.
 
 
 2
 * The retail electric cooperatives that are members of NCEMC purchase electric power at wholesale and sell it at retail in several areas of North Carolina. These cooperatives purchase their wholesale power from CPL, Duke Power Company, and Virginia Power Company, all of whom generate and transmit wholesale power. With some exceptions, CPL, Duke Power and Virginia Power serve different areas in North Carolina; in the areas that CPL serves, for example, it supplied 97% of the wholesale electric power during the period at issue in this case. Each cooperative buys its wholesale power from the company that serves the area in which the cooperative is located.
 
 
 3
 In 1974, a new Rural Electrification Administration (REA) financing program became available to the cooperatives. NCEMC determined that it would attempt to use its members' new financing ability to acquire its own generation facilities and enter into the wholesale power market in those areas of North Carolina where its members operated at retail. Its idea was that by entering the wholesale power market and generating power itself, it could obtain cheaper wholesale power for its member retail cooperatives.
 
 
 4
 To this end, NCEMC initiated discussions with CPL in August, 1974, about purchasing a part interest in one or more of CPL's generation units. CPL, which had never before sold a part interest in one of its generation plants, responded that it was not interested in selling any plants currently in operation or nearing completion, but that it was willing to discuss joint ownership of a plant that would be constructed in the future. NCEMC and CPL continued talks about joint ownership of a generation plant for eighteen months until February, 1976, at which point NCEMC broke them off because it did not feel that CPL was serious about the possibility.
 
 
 5
 NCEMC and those member retail cooperatives that buy wholesale power from CPL filed suit against CPL in August, 1977, claiming that CPL had refused to sell NCEMC a part interest in one of its generation plants and that this refusal violated Section 2 of the Sherman Act. They sought treble damages of $1.2 billion. After an extensive pretrial period, NCEMC's case was tried before Judge Bullock in February, 1992. The following evidence was presented.
 
 
 6
 When NCEMC sought to produce its own power and enter the wholesale power market, two general alternatives were available to it: building its own generation plant or buying a part interest in another plant operated by another wholesaler. Testimony of NCEMC's employees indicated that it considered both alternatives. NCEMC's cooperatives only serve a small percentage of the retail markets in which they are located; those cooperatives that purchase wholesale power from CPL, for example, have an average market share of ten percent. If NCEMC were to build a generation plant to generate wholesale power only for its own retail cooperatives, the plant would have been relatively small. While generation plants of the size NCEMC required were built during the period when NCEMC was considering building one,[1] large economies of scale are available in generating electrical power. It appears that, as a result, NCEMC determined that it could generate its own power more efficiently by purchasing a part interest in a generation plant operated by a large wholesale company than by constructing its own plant.
 
 
 7
 NCEMC, therefore, entered into the discussions with CPL that are the subject of this suit; it also initiated negotiations with Virginia Power Company, Duke Power Company, and Georgia Power Company about purchasing a part interest in one of their generation plants. The negotiations with CPL were unsuccessful, as described above.
 
 
 8
 NCEMC also elected not to purchase a part interest in one of Virginia Power's plants because the savings to its cooperatives of purchasing wholesale power that NCEMC would generate at this plant, rather than purchasing wholesale power under their existing arrangements, were too small. Negotiations between NCEMC and Georgia Power for NCEMC to purchase a part interest in one of Georgia Power's generation plants were similarly unsuccessful, although there was conflicting testimony as to why. CPL asserted that Georgia Power's asking price was too high for NCEMC; NCEMC offered testimony that in order for it to market wholesale power in North Carolina that it generated at the joint Georgia Power plant in Georgia, CPL would have had to supply NCEMC with "back-up power," which CPL declined to do because it did not have "back-up power" available at the time.
 
 
 9
 NCEMC's efforts to generate its own power and enter the wholesale power market through acquiring a part interest in a generation plant came to fruition, however, when it purchased a part interest in Duke Power's Catawba plant for $1 billion in 1980. After Catawba was completed, NCEMC used the power generated under its part interest there to enter the wholesale power market in all of the areas of North Carolina where its retail cooperatives are located.[2] At the conclusion of the NCEMC's evidence, the district court granted CPL's Fed. R. Civ. P. 50 motion for a directed verdict. Judge Bullock stated from the bench that NCEMC's claim failed because even if CPL had a monopoly in the market for wholesale power, it had no duty to sell NCEMC an equity interest in one of its plants. Judge Bullock supplemented his oral statement with a brief written opinion indicating that NCEMC had not presented evidence from which a reasonable jury could find:
 
 
 10
 (1) that the relevant market was other than the generation market, (2) that Defendant possessed monopoly power in the generation market, (3) that Defendant caused injury or fact of damage to Plaintiffs in the generation market, (4) that Defendant's conduct improperly excluded Plaintiffs from the wholesale requirements power market, and (5) that Defendant's conduct was not as consistent with permissible competition as with the illegal exercise of monopoly power.
 
 
 11
 NCEMC appeals from the district court's directed verdict.
 
 II
 
 12
 NCEMC contends that the district court erred in granting a directed verdict for CPL. Taken in pieces, NCEMC's argument is as follows. CPL had monopoly power in the market for wholesale power in those areas of North Carolina where CPL operated. By initiating discussions with CPL about acquiring a part interest in one of CPL's generation plants, NCEMC sought to compete with CPL in this market for wholesale power. The failure of CPL and NCEMC to reach an agreement for NCEMC to purchase a part interest in a CPL generation plant constituted a refusal by CPL to sell it such an interest. Because this refusal was motivated by CPL's desire to avoid competition in its wholesale power market, CPL's actions violated Section 2 of the Sherman Act.
 
 
 13
 We review de novo the district court's decision to grant a directed verdict for CPL, Gairola v. Virginia Dept. of General Services, 753 F.2d 1281, 1285 (4th Cir. 1985), and find that its decision was correct. Even if NCEMC established that the relevant market in this case was the market for wholesale power in those areas of North Carolina where CPL sold wholesale power and CPL possessed monopoly power in this market,[3] NCEMC's claim must fail.
 
 
 14
 "[A] firm with lawful monopoly power has no general duty to help its competitors...." Olympia Equipment Leasing Co. v. Western Union Telegraph Co., 797 F.2d 370, 375 (7th Cir. 1986), cert. denied, 480 U.S. 934 (1987). The lone exception to this"no-duty-to-help-competitors" rule is the "essential facilities doctrine." Olympic Equipment Leasing Co., 797 F.2d at 376. For a monopolist to be liable under the essential facilities doctrine, a plaintiff must show: "(1) control by the monopolist of the essential facility; (2) the inability of the competitor seeking access to practically or reasonably duplicate the facility; (3) the denial of the facility to the competitor; and (4) the feasibility of the monopolist to provide the facility." Laurel Sand & Gravel, Inc. v. CSX Transp., Inc., 924 F.2d 539, 544 (4th Cir.), cert. denied, 112 S. Ct. 64 (1991); Advanced Health-Care Services v. Radford Community Hosp., 910 F.2d 139, 150 (4th Cir. 1990); MCI Communications Corp. v. American Tel. & Tel. Co., 708 F.2d 1081, 113233 (7th Cir.), cert. denied, 464 U.S. 891 (1983). The plaintiff has the burden of proving each of these elements. Laurel Sand, 924 F.2d at 544.
 
 
 15
 We need not examine all of these elements because we find that NCEMC failed to meet the second one. To satisfy the second element, NCEMC had to show that, in seeking to generate its own power, it had no "economically feasible" alternative to purchasing a part interest in a CPL generation plant. MCI Communications, 708 F.2d at 1133. See Phillip E. Areeda and Herbert Hovencamp, Antitrust Law p 736.2, at 808 (1991 Supp.) ("[A]n essential facility is, at minimum, a resource possessed by the defendant that is vital to the plaintiff's competitive viability.").
 
 
 16
 NCEMC failed to make this showing. One alternative for NCEMC to purchasing a part interest in a CPL generation plant was purchasing a part interest in a generation plant owned by one of the other large power companies in the region. NCEMC did not demonstrate that it was not economically feasible to purchase such a part interest from any of these companies; in fact, the evidence appears to have established that it was quite feasible. NCEMC conducted serious negotiations with both Virginia Power and Georgia Power over purchasing a part interest in one of their plants, and only in the case of the Georgia Power negotiations did NCEMC present any evidence that such a purchase was not feasible.[4] In addition, four years after CPL and NCEMC had failed to come to agreement, NCEMC actually purchased a part interest in Duke Power's Catawba generation plant. In light of this evidence, no reasonable jury could have found that buying a part interest in a generation plant from a company other than CPL was not economically feasible for NCEMC. See City of Malden v. Union Elec. Co., 887 F.2d 157, 162 (8th Cir. 1989) (reasonable alternatives existed to a monopolist's transmission lines when neighboring companies had available, though more expensive, transmission lines).[5]
 
 
 17
 In short, NCEMC's only possible claim that CPL violated section 2 of the Sherman Act by refusing to sell it a part interest in a CPL generation plant was under the "essential facilities" doctrine. NCEMC clearly did not have a valid claim under this doctrine because it failed to show that, in seeking to generate its own power, it had no economically feasible alternative to purchasing a part interest in a CPL plant. The district court, therefore, correctly dismissed NCEMC's claim.[6]
 
 III
 
 18
 For the reasons stated, we affirm the district court's order dismissing NCEMC's claim.
 
 AFFIRMED
 
 
 [1]
 CPL presented testimony that the City of Fayetteville, North Carolina built a generation plant during this period approximately the size that NCEMC would have required
 
 
 [2]
 A negotiator for NCEMC, Robert Cleveland, testified that CPL, Virginia Power, and Duke Power all refused from 1974-1976 to sell NCEMC a part interest in one of their generation plants unless NCEMC would agree to sell the power generated from the joint plant only in those areas of the state where their company controlled the wholesale market. As a result, Cleveland stated that NCEMC was precluded from purchasing a joint interest in a single generation plant owned by CPL, Duke Power, or Virginia Power, and using that joint interest to generate power for all of its cooperatives throughout North Carolina. Retail cooperatives in CPL's areas, thus, were precluded from having NCEMC purchase a part interest in a Duke Power or a Virginia Power plant and sell the power from its part interest to them
 The strength of the wholesale companies' refusal, however, is questionable given that Duke Power later sold NCEMC the part interest in its Catawba plant and allowed NCEMC to sell the wholesale power generated at Catawba throughout North Carolina. There was some evidence that Duke Power dropped its requirement that power generated at Catawba only be sold in areas of the state where Duke Power controlled the wholesale market when REA, which helped finance NCEMC's purchase of the part interest in Catawba, asked Duke Power to drop this requirement.
 
 
 [3]
 There are obvious problems with defining the areas in which CPL sold wholesale power as the relevant market, and the district court did not find that NCEMC presented evidence to establish such a market. Because NCEMC's Section 2 claim fails for other reasons, however, we need not address this issue
 
 
 [4]
 NCEMC asserts that the reason it did not buy a part interest in a Georgia Power plant was that, in order to use the power generated at the Georgia Power plant, it needed CPL to supply it with"back-up power" and CPL could not supply this "back-up power" at the time it was requested
 
 
 [5]
 NCEMC asserts that purchasing a part interest in one of Virginia Power's or Duke Power's generation plants and using it to produce power in the market at issue here, the market where CPL generated power, was impossible because Virginia Power and Duke Power refused to sell NCEMC a part interest in a generation plant that could be used to supply wholesale power in areas of North Carolina controlled by CPL. We find this assertion untenable because four years after NCEMC's claim arose, Duke Power agreed, without any great fight, to sell NCEMC a part interest in a generation plant that NCEMC could use to market wholesale power throughout North Carolina, including in areas controlled by CPL
 
 
 [6]
 NCEMC also contends that the district court abused its discretion in not admitting a number of its exhibits. We find this contention without merit. In addition, we deny NCEMC's motion to strike a portion of CPL's brief